IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**JONATHAN T. CAMMON,**

           Plaintiff,                              No. 3:12-cv-00339-MO

        v.                                OPINION AND ORDER

**WASHINGTON COUNTY JAIL,**

           Defendant.

**MOSMAN, J.**,

       Pro se plaintiff Jonathan T. Cammon brought this suit under 42 U.S.C. § 1983. In his

amended complaint [35], Mr. Cammon alleges that defendant Washington County Jail (the

"County Jail"), violated his First, Fourth, Eighth, and Fourteenth Amendment rights. The County

Jail filed a motion for summary judgment [43] on all claims. For the reasons stated below, the

County Jail's motion is GRANTED.

## BACKGROUND

       Mr. Cammon was incarcerated at the County Jail from January 21, 2012, until February

8, 2012. (Def.'s Decl. in Supp. [50] ¶ 4.) On January 21, 2012, during the intake screening, Mr.

Cammon reported that he was taking 20 milligrams of Celexa, an antidepressant, and 750

milligrams of Vicodan, a pain reliever. (*Id.* [50] ¶ 9.) After Mr. Cammon signed a release of

information form, it was faxed to the pharmacy identified by Mr. Cammon. (*Id.* [50].) The County Jail placed Mr. Cammon on suicide watch based on the arresting officer's report that Mr. Cammon had stated that he wanted to kill himself. (*Id.* [50] at 30.)

On January 22, 2012, Arminda Coronado, M.A., Q.M.H.P., was on the mental health staff at the County Jail and met with Mr. Cammon. (*Id.* [50] at 31.) Ms. Coronado noted that Mr. Cammon was calm and cooperative, engaged easily, smiled, and was in a stable mood. (*Id.* [50].) Mr. Cammon informed Ms. Coronado that he was upset but was never suicidal. (*Id.* [50].) Based on her assessment of Mr. Cammon, Ms. Coronado determined that no referral to the medical provider or a psychiatrist was necessary. (*Id.* [50] ¶ 12.)

On January 23, 2012, the medical unit received a report from the pharmacy, indicating that Mr. Cammon had a current prescription of 20 milligrams of Celexa. (*Id.* [50] at 57.)

On January 24, 2012, the medical provider, Leslie Fitzgerald, P.A., signed and dated the pharmacy's report indicating that she had reviewed it, consistent with County Jail protocol. (*Id.* [50] ¶¶ 8–9.)  At the County Jail, the medical provider is responsible for ordering prescription medications for inmate-patients. (*Id.* [50] ¶ 6.) After a medical provider confirms that an inmate-patient has a current prescription from an outsider provider, a medical provider is also responsible for determining whether it is medically appropriate to order the prescription medication for the inmate-patient. (*Id.* [50] ¶ 8.) Mr. Cammon's medical record indicates that Ms. Fitzgerald did not order Mr. Cammon's prescription for Celexa while he was incarcerated from January 21, 2012, until February 8, 2012. (*Id.* [50] ¶ 10.)

Also on January 24, 2012, Elizabeth Pugsley, Q.M.H.P., met with Mr. Cammon. (*Id.* [50] at 32.) During Ms. Pugsley's evaluation, Mr. Cammon was cooperative and stated that he was never suicidal. (*Id.* [50].) Following her assessment, Ms. Puglsey recommended that Mr.

Cammon be removed from suicide watch, and the County Jail's supervisor approved that recommendation. (*Id.* [50] at 32, 35.)

On February 5, 2012, Robert Coplean, M.S.W., Q.M.H.P., met with Mr. Cammon for a suicide watch follow-up. (*Id.* [50] at 36.) During the follow-up, Mr. Cammon informed Mr. Coplean that he had not received his antidepressant medication. (*Id.* [50].) Mr. Coplean asked Mr. Cammon if he would like the medical provider to restart the medication. (*Id.* [50].) Mr. Cammon declined and stated, "I'll speak to my doctor when I get out. I'm OK." (*Id.* [50].)

## LEGAL STANDARD

### I.  <u>Summary Judgment</u>

A motion for summary judgment is a procedure which terminates, without a trial, actions in which "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.  56(a). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Crawford-El v. Britton*, 523 U.S. 574, 600 n.22 (1998) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

"If the moving party meets its initial burden of showing 'the absence of a material and triable issue of fact,' 'the burden then moves to the opposing party.'" *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991) (quoting *Richards v. Neilson Freight Lines*, 810 F.2d 898, 902 (9th Cir. 1987)). The nonmoving party may not rest on conclusory allegations, *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989), but must present "significant probative evidence." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986) (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968)). Such evidence must

demonstrate "the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

The court must view the evidence in the light most favorable to the nonmoving party, as well as draw all reasonable inferences in the light most favorable to the nonmoving party. *See id* at 255. Furthermore, the court construes pro se pleadings liberally and affords pro se plaintiffs the benefit of any doubt. *See Erikson v. Pardus*, 551 U.S. 89, 94 (2007).

## II.  <u>Municipal Liability Under § 1983</u>

Section 1983 provides a private right of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a federal constitutional or statutory right was violated; and (2) that the alleged violation was committed by a person acting under the color of state law. *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001).

The Supreme Court has held that municipality is a "person" subject to liability. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). A municipality, however, cannot be held liable under § 1983 on a "*respondeat superior* theory." *Id.* at 691. The requisite elements of a § 1983 claim against a municipality are:  (1) the plaintiff "was deprived of a constitutional right; (2) the County had a policy;[1] (3) the policy amounted to deliberate indifference to [the plaintiff's]

---

[1] The Ninth Circuit has defined a "policy" as "a deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Fairley v. Luman*, 281 F.3d 913, 918 (9th Cir. 2002) (quoting *Oviatt v. Pearce*, 954 F.2d 1470, 1477 (9th Cir. 1992). Construing Mr. Cammon's amended complaint and responses to summary judgment liberally, it appears Mr. Cammon alleges that two jail policies injured him. First, Mr. Cammon alleges that the County Jail had a policy of denying him antidepressants. He fails, however, to prove the existence of such a policy. Mr. Cammon has pled no facts that show a deliberate choice of action by any policymaker of the County Jail to deny or delay his medication. Second, Mr. Cammon alleges that the County Jail had a policy of allowing the medical provider to determine whether it was medically appropriate to order an inmate's current prescription. It is undisputed that the County Jail had this policy when Mr. Cammon was incarcerated. As discussed below, Mr. Cammon's claims ultimately fail because he was not deprived of a constitutional right.

constitutional right; and (4) the policy was the 'moving force behind the constitutional violation.'" *Mabe v. San Bernardino County, Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1110–11 (9th Cir. 2001) (quoting *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 835 (9th Cir. 1996)).

## DISCUSSION

In his amended complaint, Mr. Cammon alleges five claims against the County Jail under 42 U.S.C. § 1983: (1) that the County Jail was deliberately indifferent to his medical need for Celexa; (2) that the County Jail violated his First Amendment and civil rights during incarceration; (3) that the County Jail was deliberately indifferent to his medical needs in violation of the Eighth Amendment; (4) that the County Jail violated the Fourth Amendment by invading his privacy during a cell check; and (5) that the County Jail violated the equal protection clause of the Fourteenth Amendment by denying him Celexa when similarly situated inmates received it. (Am. Compl. [35] at 3.)

### I. <u>Mr. Cammon's First, Fourth, and Fourteenth Amendment Claims</u>

The first element in a §1983 claim is that the municipality deprive the plaintiff of a constitutional right, privilege, or immunity. *See Mabe*, 237 F.3d at 1110–11. Mr. Cammon has failed to demonstrate a genuine dispute of material fact on this element of his First, Fourth, and Fourteenth Amendment claims. In his amended complaint, Mr. Cammon asserts that the County Jail violated his First Amendment and civil rights "during incarceration." (Am. Compl. [35] at 3.) Additionally, he asserts that the County Jail violated his Fourth Amendment right by "invading his privacy illegally during a cell check." (*Id.* [35].) Lastly, Mr. Cammon's alleges that the County Jail violated the Equal Protection Clause of the Fourteenth Amendment by treating him differently than similarly situated inmates. (*Id.* [35].) Mr. Cammon fails to provide a factual basis or significant probative evidence for these assertions. *See Anderson*, 477 U.S. at 249.

Moreover, Mr. Cammon acknowledges that the "main reason for this lawsuit" is his Eighth Amendment claim. (*Id.* [35] at 4.) Therefore, Mr. Cammon has failed to meet his burden, and I grant the County Jail's motion for summary judgment on Mr. Cammon's First, Fourth, and Fourteenth Amendment claims.

## II.    Mr. Cammon's Eighth Amendment Claim

Mr. Cammon also fails to present significant probative evidence that his Eighth Amendment rights were violated. The Supreme Court has held that prison medical care violates the Eighth Amendment's prohibition against cruel and unusual punishment and gives rise to § 1983 liability if the conduct complained of constitutes "deliberate indifference" to the prisoner's "serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

### A.    *Serious Medical Need*

In the Ninth Circuit, a plaintiff must show a serious medical need by demonstrating that "failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1159 (9th Cir. 1991), overruled on other grounds by *WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997)). Examples of indications that a prisoner has a serious medical need include "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *McGuckin*, 974 F.2d at 1059–60. This standard applies to physical as well as mental health needs. *See Doty v. County of Lassen*, 37 F.3d 540, 546 (9th Cir. 1994).

Mr. Cammon alleges that his depression qualified as a serious medical need because his physician prescribed antidepressant medication. (Am. Compl. [35] at 4.) Furthermore, he claims

that the County Jail's failure to order his antidepressant medication resulted in further significant injury because he suffered painful withdrawals and severe emotional and mental trauma. (*Id.* [35.] at 5.) The County Jail does not appear to contest that depression is a serious medical condition, but it does dispute whether Mr. Cammon's antidepressant medication was medically necessary since he no longer takes it. (Def.'s Mem. in Supp. [44] at 11–13.)

Viewing the facts in the light most favorable to the nonmoving party, I agree with Mr. Cammon that he had a serious medical need. Here, it is undisputed that Mr. Cammon had a current prescription for antidepressant medication at the time of his incarceration. (Def.'s Decl. in Supp. [50] at 57.) Additionally, Mr. Cammon's medical records indicate that his physician refilled his prescription and increased his dosage. (Pl.'s Mem. in Supp. [36] at 2.) This evidence demonstrates that Mr. Cammon's physician found his depression to be worthy of comment because she wrote at least two prescriptions for the antidepressant medication. Therefore, I find that Mr. Cammon has alleged a serious medical need sufficient to satisfy the first prong of his Eighth Amendment claim. Accordingly, the focus of the dispute is on the second, or subjective, component—whether the evidence shows that the County Jail was deliberately indifferent to Mr. Cammon's serious medical need.

### B.    *Deliberately Indifferent*

The deliberate indifference element requires a state of mind inquiry because "[i]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). In other words, "mere 'indifference,' 'negligence,' or 'medical malpractice' will not support [a] cause of action" for deliberate indifference. *Broughton v. Cutter Labs*, 622 F.2d 458, 460 (9th Cir. 1980). Instead, a plaintiff must show that "the course of treatment the doctors chose

was medically unacceptable under the circumstances" and that the treatment was chosen "in conscious disregard of an excessive risk to plaintiff's health." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996). A prisoner can establish deliberate indifference by showing that prison officials denied, delayed, or intentionally interfered with his medical treatment.[2] *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000).

### 1.    Denial of Medical Treatment

Mr. Cammon has failed to demonstrate that the County Jail's denial of his antidepressant medication was medically unacceptable and chosen in conscious disregard of an excessive risk to his health. It is undisputed that Mr. Cammon was placed on suicide watch, that the County Jail was aware that he had a current prescription for antidepressant medication, and that he did not receive it while incarcerated. (Def.'s Decl. in Supp. [50] ¶¶ 9–10.) But the record also demonstrates that the County Jail regularly monitored Mr. Cammon's physical and emotional condition. On January 22, 2012, Ms. Coronado noted that Mr. Cammon was calm and cooperative, engaged easily, smiled, and was in a stable mood. (*Id*. [5] at 31.) Although Mr. Cammon acknowledged being upset about a fight with his girlfriend, he denied ever being suicidal. (*Id*. [5].) On January 24, 2012, Mr. Cammon reiterated to Ms. Pugsley that he was never suicidal. (*Id*. [5] at 32.) On February 5, 2012, Mr. Cammon informed Mr. Coplean that he had not yet received his antidepressant medication. (*Id*. [50] at 36.) But Mr. Coplean's consultation notes indicate that when asked if he wanted to restart his medication, Mr. Cammon declined and stated, "I'll speak to my doctor when I get out. I'm OK." (*Id.* [50].)  Significantly, Mr. Cammon never submitted a Health Request Form for his antidepressant medication, even though he had

---

[2] Mr. Cammon also alleges that the County Jail was deliberately indifferent because it did not explain why he did not receive his antidepressant medication. (Am. Compl. [35] at 5–6.) The County Jail's failure to adequately explain why Mr. Cammon did not receive his antidepressant medication is, at most, a claim for negligence. Therefore, this theory of deliberate indifference does not rise to the level of an Eighth Amendment violation. *See Broughton*, 622 F.2d at 460.

previously submitted five such requests for other medical conditions. (Def.'s Decl. in Supp. [50] ¶¶ 17–19.) These facts do not reveal a conscious disregard of an excessive risk to Mr. Cammon's health.

Although Mr. Cammon acknowledges that his behavior while talking to the County Jail's health staff was "correct," he claims that his medical needs were "obvious" and that he made multiple verbal and written requests for his medication while he was emotionally and physically suffering from withdrawals. (Pl.'s Resp. Mem. [59] at 1–2; Am. Compl. [35] at 8.) Beyond these bare assertions, however, Mr. Cammon has provided no evidence that the County Jail consciously disregarded an *excessive* risk to his health. In response to the evidence adduced by his opponent, Mr. Cammon must present significant probative evidence to survive a motion for summary judgment. *See Anderson*, 477 U.S. at 249. He has not done so. Factually unsupported allegations that his health condition was obvious and that he made informal requests do not suffice this late in the ballgame.

In addition, Mr. Cammon has submitted the unsworn declarations of several fellow inmates to demonstrate that the County Jail had knowledge of his serious medical need and suffering. (Pl.'s Resp. Mem. [59] at 3.) These declarations are likewise unavailing. Unsworn declarations must be "made true under penalty of perjury" and dated in accordance with 28 U.S.C. § 1746. The Ninth Circuit has held that § 1746 requires that a "declaration 'substantially' comply with the statute's suggested language." *Commodity Futures Trading Comm'n v. Topworth Int'l, Ltd.*, 205 F.3d 1107, 1112 (9th Cir. 1999); *see also United States v. Ritchie*, 342 F.3d 903, 909 (9th Cir. 2003). These declarations use neither the express language of § 1746 nor any language to the same effect. They are not sworn under penalty of perjury, there is no representation that they are true and correct, and none is dated. *See* 28 U.S.C. § 1746. Therefore,

9 – OPINION AND ORDER

the unsworn declarations of Mr. Cammon's fellow inmates are inadmissible and may not be considered. *See* Fed. R. Civ. P. 56(c).

In sum, to defeat summary judgment, Mr. Cammon must proffer significant probative evidence that the denial of his medication was medically unacceptable and chosen in conscious disregard of an excessive risk to his health. He failed to do so. Consequently, I grant the County Jail's motion for summary judgment on Mr. Cammon's Eighth Amendment claim for denial of medical treatment.

### 2.    Delay in Medical Treatment

To establish a claim of deliberate indifference arising from delay, a prisoner must show that the delay caused some additional harm. *McGuckin*, 974 F.2d at 1060. Mr. Cammon has failed to present evidence from which a reasonable jury could conclude that any delay in treatment caused him additional harm. *See Berry v. Burnnel*, 39 F.3d 1056, 1057 (9th Cir. 1994) (per curiam). Mr. Cammon believes that he has and "will suffer from permanent mental, physical, psychological and emotional trauma." (Am. Compl. [35] at 8.) This belief, however sincerely held, is speculative, conclusory, and factually unsupported. Mr. Cammon has failed to proffer any additional evidence in support of his allegation that the delay in receiving his antidepressant medication caused his health to suffer or that it created a significant risk of serious harm. Therefore, Mr. Cammon has failed to create a genuine issue of material fact as to whether the County Jail was deliberately indifferent in delaying his access to antidepressant medication, and the County Jail is entitled to summary judgment on this delay theory, too.

**CONCLUSION**

In the absence of a genuine issue of material fact, I GRANT the County Jail's motion for

summary judgment [43]. All claims are dismissed with prejudice.

IT IS SO ORDERED

DATED this  10    day of April, 2013.

 /s/Michael W. Mosman
MICHAEL W. MOSMAN
United States District Judge

11 – OPINION AND ORDER